240 F.2d 369
 Gene FINK, Jerome Finkelstein, Charlotte Fink, Max Blumenfeld and Gene Fink, as co-partners, Lloyd M. Blumenthal, Jack and Esther Blumenthal, Philip Goodman, and Martin Goodman, Plaintiffs-Appellants,
v.
CONTINENTAL FOUNDRY & MACHINE COMPANY, a Delaware corporation, Jay T. Osler, J. H. Briggs, Kent B. Hall, Grier Patterson, J. H. Rose, Earl Steward, and William E. Troutman, Defendants-Appellees.
 No. 11618.
 No. 11693.
 United States Court of Appeals Seventh Circuit.
 January 3, 1957.
 Rehearing Denied February 25, 1957.
 
 1
 Samuel Morgan, Norman Handelsman, Chicago, Ill., Cecil B. Cohen, East Chicago, Ind., for appellants.
 
 
 2
 Arthur D. Welton, Jr., Harold A. Smith, Grier D. Patterson, Edward J. Wendrow, Chicago, Ill., for appellees, Winston, Strawn, Smith & Patterson, Chicago, Ill., Timothy P. Galvin, Hammond, Ind., of counsel.
 
 
 3
 Before SWAIM and SCHNACKENBERG, Circuit Judges, and WHAM, District Judge.
 
 
 4
 WHAM, District Judge.
 
 
 5
 This appeal seeks a reversal of a judgment of the district court denying injunctive relief and dismissing on its merits the action filed by plaintiffs, minority stockholders of Continental Foundry and Machine Company, a Delaware Corporation (hereinafter called "Continental"), as a secondary action under Rule 23(b), Fed.Rules Civ.Proc., 28 U.S.C.A., to prevent Continental, its officers, directors and stockholders from selling its assets and liquidating the corporation.
 
 
 6
 The record shows that Continental, a large steel foundry and manufacturing company in sound financial condition, in June 1955 received from Blaw-Knox Company, a Delaware Corporation, (hereinafter called "Blaw-Knox"), another steel manufacturing concern, an offer to purchase approximately all of its assets for cash at approximate book value and to assume certain of its liabilities, including the cost of its employee pension plan. The offer was considered during the summer by the officers, the Executive Committee and certain of the directors of Continental who after such consideration concluded that the offer was sufficiently favorable that even though its acceptance would require liquidation of the corporation, which eventuality some of the directors opposed for personal reasons, the stockholders should have opportunity to pass on it. The details of the offer were not finally settled and reduced to writing until near September 1, 1955 after Blaw-Knox had succeeded in securing figures from actuaries estimating the cost to it of assuming Continental's pension plan. The writing was entitled Asset Purchase Agreement, specified the consideration, terms and conditions of the transaction, stated that the actuarial estimate of the pension liability Blaw-Knox offered to assume was approximately ten million dollars ($10,000,000) and fixed the closing time of the contract as not later than November 14, 1955.
 
 
 7
 On September 19 a directors' meeting was held by Continental with all directors present. The chairman submitted for consideration and action by the directors a plan for the liquidation of the corporation and for the sale of its assets to Blaw-Knox pursuant to its offer as set forth in writing in the Asset Purchase Agreement which was read to the meeting.
 
 
 8
 After a lengthy discussion and consideration of the plan and of the offer by Blaw-Knox to purchase the assets on terms set forth in the agreement, the board by resolution approved the plan to liquidate, recommended to the stockholders the authorization of the sale of the assets as expedient and for the best interests of the corporation, authorized the officers of Continental to execute and deliver the Asset Purchase Agreement subject to subsequent approval by the stockholders and directed that a notice be given of a special stockholders' meeting to be held on October 31, 1955 to consider and act on the plan and offer of purchase. The Asset Purchase Agreement was executed by the proper officers of the respective corporations on September 19, 1955.
 
 
 9
 The notice of such special stockholders' meeting was mailed to each shareholder on October 3 with a statement by the Board of Directors thereto attached recommending the liquidation of the corporation and the sale of its assets to Blaw-Knox pursuant to the Asset Purchase Agreement as being expedient and for the best interests of the corporation; also with a factual statement describing Continental's assets, liabilities, earnings, reserves, taxes, nature of its business including percentage of defense contracts, the market value of its common stock over the preceding three years and other pertinent information; also a copy of the Asset Purchase Agreement, with a brief summary of its terms and conditions, including the pension plan to be assumed by Blaw-Knox with an estimate of the liability so assumed at $10,000,000; also an estimate of dividends to be distributed after liquidation of $52 per share to Continental's stockholders after payment of debts; and stated that the recommended sale price of assets would approximate their book value and be higher than the highest price the stock had sold for on the market.
 
 
 10
 On October 21, 1955 plaintiffs served demands upon the Board of Directors of Continental that the resolution adopted at the directors' meeting be rescinded and no further steps be taken toward the sale of its assets and the liquidation of the corporation.
 
 
 11
 On October 28, 1955 plaintiffs began this action by filing their complaint against Continental and part of its officers, directors and stockholders (Blaw-Knox not being made a party) seeking temporary and permanent injunctions to restrain the special stockholders' meeting from approving the plan and restraining and enjoining the defendants from executing it with notice to defendants that the temporary injunction would be sought in district court at 10:00 a.m. on October 31, 1955. Pursuant to this notice the district court heard the parties by their counsel, denied the temporary injunction and set the hearing on the prayer for a permanent injunction and on the merits of the complaint for November 4, 1955 at 10:00 a.m.
 
 
 12
 On October 31, 1955 at 11:00 a.m., after the denial of the temporary injunction, the special stockholders' meeting was held and of the outstanding common stock of Continental having voting power of close to 500,000 shares, approximately 395,000, or 79%, were voted to authorize the sale of Continental's assets to Blaw-Knox and the liquidation of the corporation; approximately 25,000, or 5%, were voted in opposition; and approximately 80,000, or 16%, were not voted or were not represented at the meeting.
 
 
 13
 On November 4 the court proceeded with the hearing on the merits of the complaint and application for a permanent injunction. Copious evidence, oral and written, was received from witnesses for both parties, arguments of counsel heard and the case taken under advisement. On November 14, 1956 which was the closing date fixed in the contract with Blaw-Knox the court filed written findings of fact and conclusions of law and pursuant thereto entered judgment denying the prayer for permanent injunction and dismissing the action at plaintiffs' cost. On November 14, following the denial of the injunction sought and the dismissal of the action by the district court, the Asset Purchase Agreement between Continental and Blaw-Knox was closed between the two corporations pursuant to its terms, the assets being delivered by Continental and the consideration paid by Blaw-Knox. Continental then proceeded with its plan to liquidate.
 
 
 14
 On November 21, the court on plaintiffs' motion fixed the amount of the cost bond for appeal at $250 and on November 26 plaintiffs filed their notice of appeal with approved bond in said amount. No application for a stay order against defendants pending appeal was made by plaintiffs in district court after final judgment.
 
 
 15
 On December 2 appellants filed in this court a petition with extensive allegations of fact relating to the merits of the case and the proceedings in the district court praying an order from this court restraining appellees from consummating the sale of the corporate assets and the liquidation of the corporation pending the outcome of the appeal. On December 5 appellees filed their motion (1) to dismiss appellants' petition for injunction and (2) to dismiss the appeal. Appellees' motion to dismiss the appeal was supported by affidavit setting up facts calculated to show that the sale of assets had been consummated on November 14 and the liquidation in part completed before appellants' petition for injunction was filed in this court on December 2. Briefs were filed and on December 6 Judge Major of this court denied the petition for injunction and denied the motion to dismiss the appeal, but without prejudice.
 
 
 16
 On April 28, 1956 it was stipulated by counsel for the parties before the clerk of this court that an attorney for Blaw-Knox was present in the courtroom during the trial of this case in the district court.
 
 
 17
 On May 5, 1956 appellees filed in this court a motion, supported by affidavit, to dismiss the appeal on the ground that the cause had become moot by reason of the consummation of the Asset Purchase Agreement with Blaw-Knox and the substantial completion of the liquidation of Continental with distribution of proceeds in dividends to the stockholders, including appellants, in so far as they still owned the stock; that all but two of the plaintiff stockholders, since appeal taken, had disposed of their stock and had no further interest in the case. Appellants filed objections to the motion to dismiss with supporting affidavit showing that all eight of the plaintiffs were stockholders when the action was filed, admitting that six had thereafter disposed of their shares and that the two of the original plaintiffs who still owned stock had accepted and received payment of their liquidation dividends to date of $40 and $5 per share. Judge Finnegan on May 28 ordered this motion to be taken with the case and the briefs filed.
 
 
 18
 On July 24 it was stipulated by counsel that Cause No. 11618, being the original appeal from the district court, and Cause No. 11693, being the post judgment proceedings filed in this court, be consolidated and that all pleadings, affidavits, briefs and other written matters in each cause be deemed filed in the other. By order of this court entered on July 25, 1956 the causes were so consolidated and this court now has before it all proceedings in the district court and in this court.
 
 
 19
 This appeal, in its present state, presents two broad questions, namely, is there merit in the appeal and has the case become moot during the pendency of the appeal.
 
 
 20
 Appellees urge that the appeal, if considered on its merits, must be dismissed and the judgment of the district court affirmed. First, however, they urge that due to events since the judgment was rendered by the district court the appeal has become moot and must be dismissed.
 
 
 21
 Appellants say that the appeal is not moot for the reason that appellees during the time allowed by law for an appeal wrongfully transferred the subject-matter of this suit to Blaw-Knox which corporation had full knowledge of the injunction suit and plaintiffs' right of appeal. Appellants say further that despite events the appeal should not be dismissed as moot but should be considered on its merits that the court may grant such incidental relief, if any, as the appellants may be entitled to if the judgment be not sustained on the merits. Appellants while citing other authorities in support of their contentions chiefly rely upon the case of Ramsburg v. American Investment Co. of Illinois, 7 Cir., 231 F.2d 333.
 
 
 22
 In the Ramsburg case a plan of merger was formed between two Delaware corporations referred to in the opinion as American and Domestic. The merger was opposed by certain stockholders of Domestic in a derivative suit seeking temporary and permanent injunctions to prevent the merger. Both corporations were made parties defendant. Plaintiffs also sought to recover treble damages under the Anti-Trust Act from American for injury to Domestic through alleged illegal acts of American in exercising unlawful control of Domestic. Clayton Act, § 7, 15 U.S.C.A. § 18. After a hearing the district court denied the motion for temporary injunction. Plaintiffs appealed. Despite the appeal defendant corporations proceeded to complete the merger and in the process the assets of Domestic were transferred to American. The defendants then moved to dismiss the appeal as moot on the ground that the only act sought to be restrained, namely the merger, had been accomplished and no relief could be granted plaintiffs.
 
 
 23
 In disposing of the motion to dismiss the appeal as moot this court, speaking through Judge Lindley, reviewed applicable authorities and quoted with approval from Porter v. Lee, 328 U.S. 246, at page 251, 66 S.Ct. 1096, 90 L.Ed. 1199:
 
 
 24
 "`Where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the status quo.'" [231 F.2d 336.]
 
 
 25
 also from Turney v. Shriver, 269 Ill. 164, 109 N.E. 708:
 
 
 26
 "`Where a bill for an injunction has been filed, and the court has acquired jurisdiction of both the person and the subject-matter of the suit, and the defendant does any act which the bill seeks to enjoin, such party acts at his peril and subject to the power of the court to compel a restoration of the status, or to grant such other relief as may be proper under the particular circumstances of the case.'"
 
 
 27
 After citing other similar cases the court said: "Applying these decisions we are able to formulate the question for determination where, as here, a cause for injunctive relief is met by a contention of mootness because the status of the parties and their relationship to the subject matter has changed. The decisive issue is whether the subject matter may yet be reached by the mandatory power of equity and the status quo restored. If so, the cause is not moot. * * * And even where the subject matter has been so completely destroyed as to preclude restoration of the status quo, the court still has jurisdiction to grant incidental relief and the cause is not moot. Barrett v. Denver Tramway Corp., 3 Cir., 146 F. 2d 701; United States v. Bates Valve Bag Corp., D.C., 39 F.2d 162."
 
 
 28
 In denying the motion to dismiss the appeal as moot this court said: "We have jurisdiction of the parties and of the subject matter, i. e., the assets of Domestic, which are in the possession and control of American as the surviving corporation; and we have the power to compel a restoration should our ultimate determination be that the circumstances of the case require that result. The appeal, therefore, is not moot."
 
 
 29
 In Ramsburg both corporations involved in the merger were parties defendant and with their assets subject to the court's jurisdiction and to its mandatory powers. By the transfer of assets from one corporation to the other pending appeal the court lost jurisdiction of neither the parties nor the assets. Then, too, the complaint sought relief under the Anti-Trust Act.
 
 
 30
 A brief review of the facts in the instant case will disclose how widely it differs from Ramsburg. Of the two corporations involved in the purchase and sale of Continental's assets which appellants sought to enjoin, Continental only, the seller, is a party defendant and within the jurisdiction of the court. Blaw-Knox, the purchaser, is not a party and at no time has been within the jurisdiction of the court. The presence of an attorney for Blaw-Knox in the courtroom during the trial and at the time of the judgment did not serve to give the court jurisdiction of Blaw-Knox or affect its rights under its contract with Continental to have its assets transferred to it when injunction was denied and suit dismissed as without merit.
 
 
 31
 At the time plaintiffs were denied the permanent injunction they sought and their suit was dismissed, though they knew Continental was contractually bound to sell and transfer its assets to Blaw-Knox on that day, plaintiffs took no step under Rule 62, F.R.C.P., 28 U.S. C.A., to secure from the trial court a temporary injunction or stay for the purpose of maintaining the status quo pending appeal. Neither did plaintiffs seek a delay in the entry of the judgment to give more time for such measure to be taken if more time was required. United States v. El-O-Pathic Pharmacy, 9 Cir., 192 F.2d 62, 79; Shinholt v. Angle, 5 Cir., 90 F.2d 297; McBride v. Western Union Telegraph Co., D.C.S.D.Cal., 78 F.Supp. 446, affirmed 9 Cir., 171 F.2d 1; Lapin v. La Maur, Inc., D.C.D.Minn., 11 F.R.D. 339; Di Melia v. Bowles, D.C.D. Mass., 57 F.Supp. 710. On the same day that the judgment was entered, being under no restraint, Continental and Blaw-Knox pursuant to the terms of the contract between them closed the transaction, Continental conveying and transferring its assets to Blaw-Knox and Blaw-Knox paying to Continental the agreed consideration. When Blaw-Knox thus received title and possession on that day the assets passed from the jurisdiction of the court and beyond the reach of its equitable powers.
 
 
 32
 In the same way, after the injunction had been denied and the action dismissed, Continental was free in so far as any court order was concerned to proceed with its plan for liquidation of which the sale of its assets was a principal step. This sale had been completed and the distribution of the proceeds thereof to the stockholders was about to be made on December 2, 1956 when appellants filed in this court their petition for an order staying the liquidation during the pendency of the appeal. This petition was denied leaving the parties in the same position as before and leaving Continental free to continue the liquidation. Even then the status of the parties and their relationship to the subject-matter had been so changed as to make complete restoration of the status quo quite impossible. The liquidation has now been completed to the extent that through the distribution to the stockholders and creditors of the proceeds of the sale and of other funds it may have had Continental is without money or assets. Nothing remains to be done toward the liquidation for the court to enjoin.
 
 
 33
 The instant case is similar to Sobel v. Whittier Corp., 6 Cir., 195 F.2d 361, 363, in which a stockholder sought to enjoin a corporate merger but did not make the other corporation a party to the suit. When the district court dismissed the suit no attempt was made to have the status quo maintained pending appeal and the merger was consummated. The Court of Appeals held the appeal moot on the ground that contract rights of those not parties had attached making relief impossible. The court said: "Since appellant only asked to restrain the merger, and the order of the district court dismissing the bill of complaint dissolved any such restraint which had theretofore existed by way of a temporary restraining order, and since appellant did not take any steps to preserve the existing status pending appeal, no relief could be here given, since the plan sought to be restrained has already been carried out, and, as heretofore said, the appeal is moot. Hyams v. Calumet & Hecla Mining Co., 6 Cir., 221 F. 529." See Kelaghan v. Industrial Trust Co., 1 Cir., 211 F.2d 134; cf. Selected Products Corporation v. Humphreys, 7 Cir., 86 F. 2d 821; R. J. Reynolds Tobacco Co. v. Robertson, 4 Cir., 80 F.2d 966, certiorari denied 297 U.S. 719, 56 S.Ct. 596, 80 L. Ed. 1004.
 
 
 34
 The general law, as well as the law in this circuit, has long been established that if pending an appeal an event occurs which renders it impossible for the appellate court to grant any relief or renders a decision unnecessary the appeal will be dismissed. Selected Products Corporation v. Humphreys, supra, citing many cases. The court went on to say [86 F.2d 823]: "There must be an actual controversy; an appeal will not be entertained to determine moot questions, and it will be dismissed, therefore, if by act of the parties or otherwise the circumstances have so changed that it is impossible or unnecessary for the appellate court to grant relief." Among the cases that were cited in support of the above principle is American Book Co. v. State of Kansas, 193 U.S. 49, 24 S.Ct. 394, 48 L.Ed. 613, which, in turn, cited Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 133, 40 L.Ed. 293, where the court said: "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from a judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal."
 
 
 35
 As will be noticed, the authority last quoted qualifies the rule that an appeal that has become moot should be dismissed by the phrase "without any fault of defendant." This point has been insisted and relied upon by appellants in their opposition to the motion to dismiss this appeal as moot. They say that it was entirely by the fault of Continental after judgment that its assets have passed beyond the jurisdiction of the court and the liquidation of the corporation has advanced beyond the stage at which effectual relief would be possible. Without considering this point at length it is quickly disposed of here by saying that we find no fault in what Continental has done. It is true that it was by the act of Continental that the assets were transferred out of the jurisdiction of the court and the liquidation accomplished but Continental did only that which it had a right to do. It was under a contract to sell its assets to Blaw-Knox on the day the sale and transfer was made. Earlier the same day the court had refused to enjoin it from selling and dismissed the suit. After the case had been tried on its merits and permanent injunction denied with dismissal of the complaint for want of merit Continental was free of restraint. If plaintiffs desired that the status quo be maintained pending appeal means were afforded in proper case by Rule 62, F.R.C.P., as heretofore pointed out. Plaintiffs failed to seek such protection. The appeal was not taken until twelve days after the judgment and then no stay was sought. In the meantime the assets of Continental had passed from the court's jurisdiction by the act of Continental without fault on its part. After it was too late to be effective plaintiffs sought and were denied injunctive relief in this court on December 2, 1955. There appears to be nothing this court can do now to restore the status quo should the appeal be upheld.
 
 
 36
 By reason of events heretofore pointed out the appeal here has become moot and must be dismissed. It is so ordered.