# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1670

CHRISTOPHER PORCO,

*Plaintiff-Appellant,*

*v.*

TRUSTEES OF INDIANA UNIVERSITY, *et al.*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:03-cv-1388-DFH-VSS—**David F. Hamilton**, *Judge.*

ARGUED SEPTEMBER 12, 2005—DECIDED JUNE 22, 2006

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Like many state universities, Indiana University charges nonresident students higher tuition than their Indiana resident counterparts. Christopher Porco was born and raised in Michigan, but he attended law school in Indiana. Shortly after he finished his first year at Indiana University School of Law, Porco petitioned for reclassification as an Indiana resident for purposes of tuition. The University denied Porco's petition, and he thereafter filed suit against the Trustees of Indiana University, the Standing Committee on Residence, the Chair of the Standing Committee on Residence, and the Associate Registrar (collectively, "the University"), all in

their official capacities. Porco alleged that the University's system for classifying resident and nonresident students violated the Privileges and Immunities, Equal Protection, and Due Process Clauses of the United States Constitution. He demanded a preliminary injunction to prevent the defendants from collecting nonresident tuition from him under the University's classification system, which he sought to have declared unconstitutional. The defendants moved to dismiss Porco's suit for lack of standing, and moved in the alternative for summary judgment. The district court dismissed the suit in part and granted the defendants' motion for summary judgment as to the remainder. Porco appeals, but we dismiss his appeal as moot for the reasons stated herein.

## I.

Porco was born in Michigan and attended school in DeWitt, Michigan, until his graduation from high school in 1997. After graduation, he remained in Michigan, where he attended college at Alma College in Alma, Michigan. After graduating from college, Porco applied to law schools in Indiana, Illinois, and California. He accepted an offer of admission from the University of Indiana School of Law and moved from Michigan to Indianapolis, Indiana, in August 2001. Later that same month, he began attending Indiana University as a full-time law student.

The University maintains a set of "Rules Determining Resident and Nonresident Status for Indiana University Fee Purposes" ("Residency Rules") setting forth the policy under which a student is classified as either a resident or nonresident for fee-paying purposes. Under those rules, a student is considered a "resident student" if he or she has, for reasons other than attending school, "continuously resided in Indiana for at least twelve (12) consecutive months immediately preceding the first day of classes of the

semester." If not (subject to certain exceptions irrelevant here), the student is classified as a nonresident, and must pay a "nonresident fee" as long as he remains "continuously enrolled in the University." Although it is not entirely clear from the record what the nonresident fee was at the time Porco filed suit, the current nonresident fee for graduate level courses is an additional $224.50 per credit hour.

Porco paid the higher nonresident tuition for his first and second semesters of law school. Upon finishing his second semester, Porco applied to be classified as an Indiana resident. On May 27, 2002, he submitted the University's "Application for Classification as a Resident Student at Indiana University for Fee-Paying Purposes." In it, he set forth the steps he had taken that he maintained evidenced his status as an Indiana resident. Specifically, Porco had registered to vote in Indiana, had obtained an Indiana driver's license, had registered his car in Indiana, and had opened an Indiana bank account. He had secured part-time employment in Indiana during his second semester of law school and also had a full-time summer job at a law firm in Indiana. Porco also submitted a "personal statement," in which he professed his intention to reside in Indiana for the rest of his life and raise a family there. For example, he explained his rejection of an offer of admission from the University of San Diego as follows: "I turned down this 'California dream' because I knew it wasn't where I belong—I belong in Indiana." He concluded with the observation that, "I may not be a Hoosier by birth but I am one by choice."

Thomas A. May, the Associate Registrar, denied Porco's request. May explained that Porco was ineligible for reclassification under Residency Rules 1a and 1b. Rule 1a provides that an individual who moves to Indiana from another state does not acquire residency (for fee-paying purposes) until he resides in the state for at least twelve consecutive months, and Rule 1b explains that time spent

in Indiana "for the predominant purpose of attending a college, university, or other institution of higher education" does not count toward the twelve-month requirement. At the time he applied for reclassification, Porco had been in Indiana just over nine months, and had been attending law school for almost that entire time. Thus, May explained, he did not meet the criteria for reclassification under Rule 1a and 1b.

Porco appealed May's decision to the Standing Committee on Residence and was granted a hearing on his appeal on June 11, 2002. At the hearing, Porco again represented that he intended to make Indiana his permanent home, and reiterated the things he had done to that end, such as obtaining an Indiana driver's license and staying in Indiana to work for the summer. Approximately one month after the hearing, Jo Anne Bowen, Chair of the Standing Committee on Residence, wrote Porco to inform him that the Committee had denied his appeal. Bowen explained that the Committee had considered Porco's reasons for coming to Indiana and his reasons for staying, but concluded that his predominant purpose in coming was to attend school, and that his purpose had not changed. Porco thus paid the nonresident fee for Fall semester 2002 and Spring semester 2003.

At the beginning of what would be his final semester, Fall 2003, Porco sued Jo Anne Bowen, Thomas May, the Standing Committee on Residence, and the Trustees of Indiana University. He alleged that the University's Residency Rules, both facially and as applied to him, violated the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, and the Privileges and Immunities Clause of the Fourteenth Amendment. In his complaint, Porco requested, among other things, a preliminary injunction ordering the University to reclassify him as a resident student so that he could pay the lower rate of tuition and continue with his classes

while the case was pending. Before the court ruled on Porco's request for injunctive relief, the parties reached an agreement. In lieu of litigating Porco's request for injunctive relief under the time pressures created by the four-month semester, they agreed that Porco would tender the difference between that semester's resident and nonresident tuition—$5,825.60—to the Clerk of the Court to be dispersed in accordance with the court's final judgment.

The University then moved to dismiss Porco's suit, or, in the alternative, for summary judgment. It argued that Porco lacked standing to challenge the Residency Rules because he had never truly intended to live permanently in Indiana, as evidenced by the fact that he had returned to Michigan after graduating from law school. Alternatively, it argued that Porco's challenges failed on the merits because the Residency Rules were constitutional under *Vlandis v. Kline*, 412 U.S. 441 (1973), and other Supreme Court precedent allowing state schools to establish bona fide residency criteria for out-of-state students. Porco also moved for summary judgment.

The district court entered judgment for the defendants. It broke down Porco's challenges to the Residency Rules into two parts: challenges to the twelve-month durational requirement in Rule 1a, and challenges to the "predominant purpose" test in Rule 1b. The court agreed with the defendants that Porco lacked standing to challenge the twelve-month residency requirement in 1a. The court concluded that the defendants had ultimately denied Porco's application under Rule 1b (the "predominant purpose" provision), and thus none of Porco's alleged injury was traceable to Rule 1a. The court then determined that Porco had standing to challenge the "predominant purpose" test in Rule 1b, but that his challenge failed on the merits because the rule was rationally related to Indiana's legitimate interest in ensuring that only bona fide residents received the in-state tuition rate. It thus granted the defendants' motion to

dismiss as it related to Porco's challenge to the durational portion of the residency rules, and granted summary judgment to the defendants on Porco's remaining claims.

The court's judgment included an instruction to the Clerk of the Court to distribute the disputed $5,825.60 to the defendants. The Clerk did so on March 10, 2004, ten business days and fourteen calendar days after the court entered judgment (February 24, 2005). On March 14, Porco appealed, and he simultaneously moved to stay the execution of judgment pending appeal, citing Federal Rule of Appellate Procedure 8(a)(1)(A) (instructing litigants to move first in the district court for a stay of judgment pending appeal). Because the Clerk had already distributed the funds upon expiration of the 10-day automatic stay, *see* Fed. R. Civ. P. 62(a), the court denied Porco's motion to stay the judgment as moot.

## II.

On appeal, Porco reiterates his claim that the University's Residency Rules, both facially and as applied, violate the Due Process and Equal Protection Clauses of the Constitution. He fails, however, to address the more fundamental question with which we must begin: whether his appeal is moot because the Clerk has already distributed the disputed $5,825.60 to the University.

Article III, § 2 of the Constitution gives federal courts the power to adjudicate only "actual, ongoing, controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006). Accordingly, it is well-settled that a federal court "has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (citation and internal quotations omitted). If at any

stage of the proceedings, an event occurs which renders it impossible for the court to provide "any effectual relief whatever," to the prevailing party, the case must be dismissed. *Id.* (*quoting Mills v. Green*, 159 U.S. 651, 653 (1895)); *see also United States v. Balint*, 201 F.3d 928, 936 (7th Cir. 2000). The University maintains that the Clerk's distribution of the $5,825.60 is just such an intervening event. That figure represents the difference between resident and nonresident tuition for Porco's final semester, and is concededly the only thing still at issue in Porco's suit.

As explained above, the district court's entry of judgment on February 24, 2005 included an instruction to the Clerk to "distribute to defendants the funds deposited with the court in this action." Federal Rule of Civil Procedure 62(a) provides for a ten-day automatic stay on the execution of judgment. *See* Fed. R. Civ. P. 62(a). Rule 62 also allows an appellant to post a supersedeas bond to obtain a stay pending appeal. *See* Fed. R. Civ. P. 62(d). In Porco's case, when the automatic stay expired on March 10, 2005, the Clerk distributed the funds. Porco appealed four days later, on March 14, and only then did he move to stay the judgment pending appeal, citing Federal Rule of Appellate Procedure 8(a) instead of Rule 62(d). By then, the funds had already been released.

In the ordinary case, Porco's failure to obtain a stay pursuant to Rule 62(d) would not moot his appeal because he could seek reimbursement if he succeeded on appeal. *See Dale M. ex rel. Alice M. v. Bd. of Educ.*, 237 F.3d 813, 815 (7th Cir. 2001) ("A judgment creditor who pays the judgment pending appeal instead of posting a supersedeas bond . . . is entitled to the return of its money if the decision is reversed, and so the payment does not moot the appeal unless the appellant has relinquished his right to seek repayment if he wins."). However, that is not possible here. Indiana University is a part of the state, *see Omosegbon v. Wells*, 335 F.3d 668, 672 (7th Cir. 2003), and thus the

Eleventh Amendment protects the defendants (all sued in their official capacities) from satisfying a money judgment. *See*, *e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Porco agreed in the district court to withdraw his claim for injunctive relief (which may have come within the *Ex parte Young* exception to the Eleventh Amendment, *see Wells*, 335 F.3d at 673), and in exchange the University tendered the disputed sum to the Clerk. Because Porco failed to timely seek a stay on the execution of the court's judgment, as he was entitled to do under Rule 62(d), Porco's suit is now essentially one for monetary compensation from the state. As such, it is barred by the Eleventh Amendment. *See Edelman*, 415 U.S. at 663; *see also Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) ("[A] State is not a 'person' against whom a § 1983 claim for money damages might be asserted."); *Doe v. Heck*, 327 F.3d 492, 508 n.13 (7th Cir. 2003) ("To the extent the plaintiffs' suit against the defendants in their official capacities with the Bureau [of Milwaukee Child Welfare] seeks retrospective monetary damages, this action constitutes a suit against the state that is prohibited by the Eleventh Amendment.").

Porco recognized as much in his motion for a stay pending appeal. In that motion, he acknowledged that because the defendants are state officials sued in their official capacities, without a stay he would "lose his right to an appeal." Despite his apparent awareness that his case would become moot if the funds were distributed, Porco's opening brief on appeal makes no mention of the possibility that his appeal became moot when the Clerk distributed the funds.

Instead, Porco waits until his reply brief to respond briefly to the University's contention that the case is moot. He then suggests that his case is not moot because if he prevailed he could still obtain costs. He also claims that the

district court erred when it denied his motion for a stay pending appeal. These arguments, appearing as they do for the first time in Porco's reply brief, are waived. *E.g.*, *Hart v. Transit Mgmt.*, 426 F.3d 863, 867 (7th Cir. 2005) (per curiam). Moreover, they are meritless. To support his contention that he could still obtain costs, Porco points out that the Eleventh Amendment "does not bar monetary relief, including costs, ancillary to the [sic] prospective injunctive relief." But Porco no longer has a claim for injunctive relief. Not only has he since graduated from Indiana University, Porco withdrew his claim for injunctive relief when the University deposited the $5,825.60, so his contention about costs is irrelevant. As for his claim that the district court erred by denying his motion for a stay, it is based largely on his own belief that it is "illogical and contradicting" that he is allowed 30 days to file a notice of appeal but only 10 days to request a stay. We see no contradiction in the rule, and the fact that it requires some vigilance on the part of the appellant does not make it "illogical." Porco also claims that at the time he moved for a stay, he did not know that the Clerk had already executed the judgment. He cites no authority, however, suggesting that the Clerk had a duty to inform him before distributing the funds. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (reiterating rule that unsupported or undeveloped arguments are waived).

Porco's arguments boil down to a protest that it is not his fault that the funds were distributed. This court rejected a similar line of reasoning in *Fink v. Cont'l Foundry and Mach. Co.*, 240 F.2d 369 (1957). In *Fink*, shareholders of Continental, a large steel foundry and manufacturing company*,* filed suit to enjoin Continental from liquidating and selling its assets to another corporation. *Id.* at 371. The district court denied the plaintiffs' request for a permanent injunction, and thereafter Continental moved forward with the sale and liquidation pursuant to the terms of a previ-

ously agreed-upon purchase agreement. *Id.* This court rejected the plaintiffs' claim that the sale had not mooted the appeal. The court explained that, "If plaintiffs desired that the status quo be maintained pending appeal means were afforded . . . by Rule 62." *Id.* at 375. The court also pointed out that although the plaintiffs "knew Continental was contractually bound to sell and transfer its assets . . . plaintiffs took no step under Rule 62 . . . to secure from the trial court a temporary injunction or stay for the purpose of maintaining the status quo pending appeal." *Id.* at 374. The same rationale applies here. The terms of the judgment itself informed Porco that the Clerk would distribute the funds to the University. Although he could have moved for a stay pursuant to Rule 62(d) during the ten-day period afforded by Rule 62(a), he did not do so. By the time he did move for a stay, it was too late. *See Fink*, 240 F.2d at 373 (pointing out that plaintiffs could have sought delay in the entry of judgment "if more time was required"). In distributing the funds the Clerk was simply executing the terms of the judgment and thus cannot be blamed for Porco's current predicament. *See id.* at 375 (rejecting plaintiffs' attempt to blame defendant for causing case to become moot when defendant "did only that which it had a right to do").

In sum, Porco's failure to seek a stay of the district court's judgment before it was executed means that there is no relief this court can offer him. *Cf. BASF Corp. v. Old World Trading Co.*, 979 F.2d 615, 616 (7th Cir. 1992) (appealing party must seek stay or risk possibility that prevailing party will execute judgment on appeal); *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1263-64 (7th Cir. 1986) (merely filing appeal without obtaining stay under Rule 62(d) does not prevent creditor from enforcing judgment). The money in dispute has been distributed. Even if Porco's position on appeal had merit, he could not recover the funds from the University because it is an arm of the State of Indiana and thus protected by the Eleventh Amendment.

*Cf. Balint*, 201 F.3d at 936 (holding that defendants' appeal of restitution order was moot when a codefendant had paid restitution in full; court could not "order the City to refund . . . money that one of their colleagues paid").

We therefore DISMISS Porco's appeal as moot.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*