Slip Op. 07-28

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| TEMBEC, INC., | : | |
| Plaintiff, | : | |
| and | : | |
| GOVERNMENT OF CANADA, GOUVERNEMENT DU QUEBEC, GOVERNMENT OF ONTARIO, GOVERNMENT OF ALBERTA, GOVERNMENT OF BRITISH COLUMBIA, CANADIAN LUMBER TRADE ALLIANCE, and ABITIBI-CONSOLIDATED, INC., | : | Before: Jane A. Restani, Chief Judge, Judith M. Barzilay & Richard K. Eaton, Judges |
| Plaintiff-Intervenors, | : | Consol. Court No. 05-00028 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant, | : | |
| and | : | |
| COALITION FOR FAIR LUMBER IMPORTS EXECUTIVE COMMITTEE, | : | |
| Defendant-Intervenor. | : | |

**OPINION AND ORDER**

Decided: February 28, 2007

[Defendant United States' motion to dismiss denied. Defendant United States' motion for reconsideration and vacatur of the court's decision in Tembec, Inc. v. United States, 30 CIT __, 461 F. Supp. 2d 1355 (2006) ("Tembec II") denied. Tembec II judgment vacated.]

Baker & Hostetler, LLP (Elliot Jay Feldman, Bryan Jay Brown, John Burke, Robert Lewis La Frankie) for Plaintiff Tembec, Inc.

Arnold & Porter, LLP (Michael Tod Shor) for Plaintiff-Intervenor Abitibi-Consolidated, Inc.

Steptoe & Johnson, LLP (Mark Astley Moran, Alice Alexandra Kipel, Sheldon E. Hochberg, Michael Thomas Gershberg) for Plaintiff-Intervenor Canadian Lumber Trade Alliance Executive Committee.

Arent Fox Kintner Plotkin & Kahn, PLLC (Matthew J. Clark, Keith Richard Marino) for Plaintiff-Intervenor Gouvernement du Quebec.

Hogan & Hartson, LLP (Mark S. McConnell, Craig Anderson Lewis, Harold Deen Kaplan, Jonathan Thomas Stoel) for Plaintiff-Intervenor Government of Ontario.

Akin, Gump, Strauss, Hauer & Feld, LLP (Spencer Stewart Griffith, Bernd G. Janzen, Anne K. Cusick, Jason Alexander Park) for Plaintiff-Intervenor Government of British Columbia.

Weil, Gotshal & Manges, LLP (M. Jean Anderson, Amy Tross Dixon, Gregory Husisian, John Michael Ryan, J. Sloane Strickler); Wilmer, Cutler, Pickering, Hale & Dorr, LLP (Randolph Daniel Moss) for Plaintiff-Intervenor Government of Canada.

Arnold & Porter, LLP (Lawerence A. Schneider, Claire Elizabeth Reade) for Plaintiff-Intervenor Government of Alberta.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Acting Director; (Stephen Carl Tosini), Commercial Litigation Branch, Civil Division, United States Department of Justice; Dean Pinkert, Senior Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce; Theodore R. Posner, Associate General Counsel, Office of the United States Trade Representative for Defendant United States.

Dewey Ballantine, LLP (Kevin M. Dempsey, Alan William Wolff, Harry Lewis Clark, David Adrian Bentley) for Defendant-Intervenor Coalition for Fair Lumber Imports Executive Committee.

Per Curiam: On October 12, 2006, Defendant the United States filed a motion pursuant to USCIT Rule 12(b)(1) seeking dismissal of the case that resulted in the issuance of Tembec, Inc. v. United States, 30 CIT __, 461 F. Supp. 2d 1355 (2006) ("Tembec II"). See Def.'s Mot. Dismiss. By its motion, Defendant maintained that the matter had been rendered moot by the

action of the United States Department of Commerce ("Commerce") on October 12, 2006, revoking the contested antidumping and countervailing duty orders covering imports of Canadian softwood lumber into the United States.   See Def.'s Mot. Dismiss 2–3; see also Certain Softwood Lumber Products from Canada, 71 Fed. Reg. 61,714 (ITA Oct. 19, 2006) (notice) (revoking the underlying antidumping duty order) ("AD Order Revocation"); Certain Softwood Lumber Products from Canada, 71 Fed. Reg. 61,714 (ITA Oct. 19, 2006) (notice) (revoking the underlying countervailing duty order) ("CVD Order Revocation"); Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36,068 (ITA May 22, 2002) ("AD Order"); Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36,070 (ITA May 22, 2002) ("CVD Order") (collectively, the "Orders").

The following day, October 13, 2006, we issued Tembec II, which directed that "all of Plaintiffs' unliquidated entries, including those entered before, on, and after November 4, 2004, must be liquidated in accordance with the final negative decision of the NAFTA panel," Tembec II, 30 CIT at __, 461 F. Supp. 2d at 1367, and further ordered Commerce to instruct the Bureau of Customs and Border Protection ("Customs") to "refund, with interest, all [antidumping duty] and [countervailing duty] cash deposits on all unliquidated entries of softwood lumber from Canada made on or after May 22, 2002."   See J. Tembec II of Oct. 13, 2006, at 3.

On November 13, 2006, in a postjudgment motion styled as one seeking reconsideration and vacatur of Tembec II, Defendant renewed the substance of its October 12, 2006, motion to dismiss.   See Def.'s Mot. Recons. & Vacate Tembec II 1 ("Def.'s Mot. Recons. & Vacate") (asking the court pursuant to USCIT R. 59 to "reconsider its decision in [Tembec II], and vacate that decision and judgment as moot").   By its motion, Defendant raised the additional claim that

the court committed an error of law by not addressing in Tembec II "the Court's jurisdiction to order relief that had already been provided." Def.'s Mot. Recons. & Vacate 7.

Jurisdiction lies pursuant to 28 U.S.C. § 1581(i) (2000). See Tembec, Inc. v. United States, 30 CIT __, __, 441 F. Supp. 2d 1302, 1315–27 (2006) ("Tembec I").[1] Based on our conclusion that the matter was not moot on October 13, 2006, we deny both Defendant's motion to dismiss and its motion to reconsider and vacate the court's decision in Tembec II. Because we find that the liquidation instructions of October 31, 2006, which resulted from a prejudgment agreement entered into by the Governments of the United States and Canada, provided Plaintiffs with the relief they sought, the Tembec II judgment is vacated.[2]

## I. Background

On July 12, 2006, the court issued Tembec I, its first decision in this case, which found invalid the actions of the United States Trade Representative ("USTR") ordering the

---

[1]        Defendant appealed the court's decisions in Tembec I and Tembec II on December 11, 2006. See Tembec I, 30 CIT __, 441 F. Supp. 2d 1302 (2006), appeal docketed, No. 2007-1102 (Fed. Cir. Dec. 19, 2006); Tembec II, 30 CIT __, 461 F. Supp. 2d 1355 (2006), appeal docketed, No. 2007-1111 (Fed. Cir. Dec. 26, 2006). On January 8, 2007, Defendant filed with this Court a status report "informing the Court of a motion to remand the appeals of the final judgment in this matte[r]" that it had filed with the Court of Appeals for the Federal Circuit on the same day. Def.'s Mot. Leave File Status Report & Status Report 1. On February 15, 2007, the Federal Circuit denied Defendant's motion and, in accordance with its rules, deactivated Defendant's appeal. See Tembec, Inc. v. United States, No. 2007-1102, -1111 (Fed. Cir. Feb. 15, 2007) (order denying motion to remand and deactivating appeal) (Rader, J.).

[2]        Under the Federal Rules of Civil Procedure, upon which this Court's rules are based, the terms "decision" and "judgment" do not have the same meaning. A decision "consists of the court's findings of fact and conclusions of law." 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2651, at 9 (3d ed. 1998). On the other hand, a judgment is "the pronouncement of that decision and the act that gives [the decision] legal effect." Id. (footnote omitted); see also Rau v. Apple-Rio Mgmt. Co., Inc., 85 F. Supp. 2d 1344, 1346 (N.D. Ga. 1999); Bryan v. City of Madison, Miss., 130 F. Supp. 2d 798, 805 (S.D. Miss. 1999). Thus, vacatur of a judgment can be had without withdrawing the decision.

implementation of a United States International Trade Commission affirmative threat of material

injury determination with respect to imports of Canadian softwood lumber into the United States.

In Tembec I, the court reserved decision on the remedy to be imposed.  See Tembec I, 30 CIT at

__, 441 F. Supp. 2d at 1343.

On September 12, 2006, the Governments of Canada and the United States signed an

agreement designed to settle the softwood lumber dispute, albeit at an undetermined "Effective

Date."  See Softwood Lumber Agreement Between the Government of Canada and the

Government of the United States of America (Sept. 12, 2006), Art. III, as amended by Agreement

Between the Government of the United States of America and the Government of Canada

Amending the Softwood Lumber Agreement Between the Government of the United States of

America and the Government of Canada Done at Ottawa on 12 September 2006 (Oct. 12, 2006)

("Agreement").  By its terms, the Agreement was to enter into effect after the parties exchanged

letters certifying that the conditions set out in Article II thereof were met.  See Agreement, Art. II

(stating, among other things, that the Agreement would not have legal effect unless and until "the

CIT has modified the injunctions against liquidation issued in [West Fraser Mills Ltd. v. United

States, Consol. Ct. No. 05-00079] to permit the United States to fulfill its obligations under

Article III").  The certifying letters were exchanged on October 12, 2006.[3]  Thus, the

Governments of Canada and the United States attested to each other that the Article II conditions

---

[3]      The injunctions in West Fraser Mills Ltd. v. United States, Consol. Ct. No. 05-00079, were modified on October 27, 2006.  See W. Fraser Mills, Consol. Ct. No. 05-00079 (CIT Oct. 27, 2006) (order modifying preliminary injunctions) (Restani, C.J., Eaton & Stanceu, JJ.). The West Fraser Mills case involves an appeal to this Court of Commerce's final determination in the first periodic review of the AD Order covering U.S. imports of Canadian softwood lumber. See W. Fraser Mills, Compl. ¶ 1.

had been satisfied, even though the injunctions on liquidation present in West Fraser Mills remained in place. See W. Fraser Mills, Consol. Ct. No. 05-00079 (CIT Mar. 7, 2005) (order granting preliminary injunction) at 2 (enjoining Defendant, during the pendency of the action, from liquidating entries of Canadian softwood lumber that "were entered, or withdrawn from warehouse, for consumption during the period May 22, 2002, through April 30, 2003"); W. Fraser Mills, Consol. Ct. No. 05-00079 (CIT Apr. 1, 2005) (order granting preliminary injunction) at 2 (same); W. Fraser Mills, Consol. Ct. No. 05-00079 (CIT May 20, 2005) (order granting preliminary injunction) at 3 (same).

Also, on October 12, 2006, Commerce retroactively revoked the AD Order and the CVD Order applicable to entries of softwood lumber from Canada. See AD Order Revocation, 71 Fed. Reg. at 61,714; CVD Order Revocation, 71 Fed. Reg. at 61,714. Under the terms of the AD Order Revocation, Commerce stated that it would instruct Customs "to cease collecting cash deposits, as of October 12, 2006, on imports of softwood lumber products from Canada," and would further require Customs "to liquidate all entries made on or after May 22, 2002, without regard to antidumping duties, *except that, where liquidation of certain entries is enjoined for antidumping purposes, the antidumping liquidation instructions for such entries will be issued upon removal of the injunction*." AD Order Revocation, 71 Fed. Reg. at 61,714 (emphasis added). The following day, Customs provided its port directors with liquidation instructions received from Commerce mirroring the terms set forth in the AD Order Revocation. See Instructions from Dir., Special Enforcement, to Dirs. of Field Operations, Port Dirs. (Oct. 13, 2006) at 1–2 ("October 13 Liquidation Instructions").

The "except" language in the October 12, 2006, AD Order Revocation was necessary

because of the continued existence of the injunctions against liquidation present in West Fraser

Mills.  Those injunctions prevented Customs from liquidating entries of the Canadian

merchandise made between May 22, 2002, and April 30, 2003.  On September 21, 2006,

Defendant, who is also the defendant in West Fraser Mills, filed a partial consent motion asking

the court to lift the injunctions.  The panel hearing that case granted Defendant's motion and

modified the injunctions on October 27, 2006, allowing the United States to "liquidate all

Covered Entries [of softwood lumber from Canada] made on or after May 22, 2002 without

regard to antidumping or countervailing duties and refund all deposits collected on such entries

with all accrued interest pursuant to 19 U.S.C. § 1677g(b) to the Importers of Record or their

designates."  W. Fraser Mills, Consol. Ct. No. 05-00079 (CIT Oct. 27, 2006) (order modifying

preliminary injunctions) (Restani, C.J., Eaton & Stanceu, JJ.) (internal quotation marks omitted).

On October 31, 2006, Customs relayed to its port directors Commerce's second set of

liquidation instructions, which ordered Customs officials to: (1) "cease immediately any

suspension of liquidation for all shipments of certain softwood lumber from Canada entered, or

withdrawn from warehouse, for consumption from 05/22/2002 through 04/30/2003"; (2)

liquidate those entries "without regard to antidumping duties"; and (3) refund "all deposits . . .

with accrued interest to the importers of record or their designates."  Instructions from Dir.,

Special Enforcement, to Dirs. of Field Operations, Port Dirs. (Oct. 31, 2006) at 1–2 ("October 31

Liquidation Instructions").  Thus, by October 31, 2006, liquidation instructions were issued with

respect to all subject imports of Canadian softwood lumber, directing that they be liquidated

without regard to antidumping duties and that the cash deposits be returned to the importers of

record, with interest.

**II. Standard of Review**

Defendant's motion to dismiss asserts that the court lacked jurisdiction over the subject

matter of this case when it issued the decision and judgment in Tembec II.  Where the Court's

jurisdiction is challenged, "[t]he burden of establishing jurisdiction . . . lies with the party

seeking to invoke the court's jurisdiction." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573,

1583 (Fed. Cir. 1993).  Further, the Constitution permits a federal court to exercise jurisdiction

only over a live case or controversy.  U.S. Const. art. III, § 2.  "This case-or-controversy

requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . .

The parties must continue to have a personal stake in the outcome of the lawsuit." Spencer v.

Kemna, 523 U.S. 1, 7 (1998) (internal quotation marks & citation omitted).

A motion to reconsider or vacate a prior decision "should be granted, and the underlying

judgment or order modified, when a movant demonstrate[s] that the judgment is based on

manifest errors of law or fact." Union Camp Corp. v. United States, 23 CIT 264, 270, 53 F.

Supp. 2d 1310, 1317 (1999); see also USCIT R. 59.

**III. Discussion**

The primary issue for us to decide is whether Commerce's October 12, 2006, revocation

of the Orders rendered this case moot and thus ousted the court of jurisdiction to issue Tembec II.

Defendant insists that this is the case.[4]  According to Defendant, this matter was moot as of

---

[4]      While the court is considering both the United States' motion to dismiss pursuant
to USCIT Rule 12(b)(1) and its motion for reconsideration and vacatur pursuant to USCIT Rule
59(e), the parties agree that the arguments for and against the two motions are the same. See,
e.g., Def.'s Mot. Recons. & Vacate 4–5; Pl. Tembec Inc.'s Opp'n Def.'s Mot. Recons. & Vacate
Tembec II 1 ("Defendant's Motion for Reconsideration and to Vacate has the same substantive
basis as its pending motion to dismiss on mootness grounds—that the entry into force of the
(continued...)

October 12, 2006, because "after [the] retroactive revocation (without the possibility of

reinstatement) [of the Orders], all further relief requested by the [P]laintiffs in their complaint

had either been provided, or the provision of relief was wholly ministerial."  Def.'s Mot. Recons.

& Vacate 5 (citing Def.'s Mot. Dismiss 7).  Specifically, Defendant maintains that "[t]he fact that

[Customs's] ministerial task of liquidating all relevant entries of softwood lumber [was] not yet

complete, or that liquidation of the entries during the first review period [was] enjoined, is

irrelevant to the mootness analysis in this case."  Def.'s Mot. Dismiss 6.[5]

For their part, Plaintiffs insist that the controversy remained alive when Tembec II was

issued on October 13, 2006, because the "injunctions in [West Fraser Mills] were still in place,

preventing the liquidation of all entries of softwood lumber from Canada."  Pl. Tembec's Opp'n

Def.'s Mot. Recons. & Vacate 2–3; see also Pl. CLTA's Opp'n Def.'s Mot. Dismiss 4.  In other

words, Plaintiffs contend that Defendant's argument overlooks both the specific nature of the

---

[4](...continued)
settlement between the Governments of the United States and Canada made the case moot on
October 12, 2006, the day before the Court entered its judgment."); Pl. CLTA's Opp'n Def.'s
Mot. Recons. & Vacate Tembec II 1 (same).  Thus, the court will address issues in the context of
Defendant's motion for reconsideration and vacatur.

[5]        A duty is considered to be "ministerial" if its performance leaves nothing to the
actor's discretion.  See Mississippi v. Johnson, 71 U.S. (4 Wall.) 475, 498 (1866) (defining
ministerial duty as "a simple, definite duty, arising under conditions admitted or proved to exist,
and imposed by law").  Although it is true that because "Customs merely follows Commerce's
instructions in assessing and collecting duties," it plays only a "ministerial role in liquidating
antidumping duties," Mitsubishi Electronics America, Inc. v. United States, 44 F.3d 973, 977
(Fed. Cir. 1994), Defendant's characterization of all actions taken subsequent to the Orders'
revocation to provide Plaintiffs complete relief as "ministerial" is overly broad.  Indeed,
Defendant's assertion failed to take into account that: (1) its motion to modify the injunctions
against liquidation in West Fraser Mills was not made until September 21, 2006; (2) that motion
was opposed by several Canadian softwood lumber mills; and (3) the panel hearing West Fraser
Mills had to determine the propriety of lifting the injunctions in the face of that opposition.  See
Def.'s Mot. Modify Injs. & Req. Expedited Consideration, Attach. 2.

relief sought by Plaintiffs and the actual effect of the AD Order Revocation.

Because we find that Defendant's revocation of the Orders on October 12, 2006, did not

provide Plaintiffs with the complete relief sought in their complaint, the motion pursuant to

USCIT Rule 59 to reconsider and vacate our decision and judgment as moot is denied.  That the

case was not moot can be seen by an examination of Plaintiffs' complaint asking the court,

among other things, to:

> (c)    Order Commerce to: (1) revoke the [Orders] on *Softwood
> Lumber from Canada* in full; (2) instruct Customs to terminate
> suspension of liquidation with regard to all entries of softwood
> lumber from Canada for the period May 22, 2002 forward,
> liquidate those entries without regard to antidumping or
> countervailing duties, and refund, with interest, all cash deposits
> collected on those entries since May 22, 2002 . . . .

Am. & Supplemental Compl. ¶ 37(c).[6]  Thus, Plaintiffs sought two things: (1) the revocation of

the Orders and (2) an order directing Commerce to issue instructions to Customs directing the

liquidation of all their entries without unfair trade duties, including those made from May 22,

2002, through April 30, 2003.

While the revocation of the Orders gave Plaintiffs the first part of the relief they sought, it

fell short of affording them complete relief.  That is, the AD Order Revocation did not direct the

liquidation of all subject merchandise entered since May 22, 2002.  See AD Order Revocation,

---

[6]      In Tembec I, we found for Plaintiffs with respect to the relief requested in
paragraphs 37(a), (b) and (d) of their complaint.  See Tembec I, 30 CIT at __, 441 F. Supp. 2d at
1343; see also Am. & Supplemental Compl. ¶ 37(a), (b) & (d) (asking court to hold unlawful
Commerce's actions taken with respect to its continued enforcement of the Orders based on
December 20, 2004 amendment).  Plaintiffs also asked the court, in paragraph 37(e) of their
complaint, to enjoin the USTR from taking any further action to implement the affirmative injury
determination.  That demand was addressed by our holdings in Tembec I that the USTR acted
ultra vires in ordering the implementation of the affirmative injury determination, and thus that
the Orders were not supported by an affirmative injury determination.

71 Fed. Reg. at 61,714.  Likewise, as prescribed by the AD Order Revocation, the October 13

Liquidation Instructions did not direct liquidation of the enjoined entries, i.e., those that were

subject to the preliminary injunctions against liquidation in West Fraser Mills.  See October 13

Liquidation Instructions at 1.  As a result, Commerce's actions on October 12, 2006, did not give

Plaintiffs all that they were seeking.  Indeed, the language of the AD Order Revocation and the

language of the October 13 Liquidation Instructions make clear that they were intended to grant

only partial relief by expressly excepting out liquidation of the enjoined entries.  As the

Government of Canada points out, "[a]lthough the United States revoked the [Orders] on

October 12 pursuant to the [Agreement], that revocation was not sufficient to secure the refund

of all estimated duty deposits that had been collected since the [Orders]."  Gov't Canada Opp'n

Def.'s Mot. Recons. & Vacate 2.   In short, because the revocation of the Orders neither

purported to provide Plaintiffs with all the relief they sought, nor did it do so in fact, this case

was not moot on October 12, 2006.  Therefore, on October 13, 2006, the parties retained a

"personal stake in the outcome of the lawsuit," Spencer, 523 U.S. at 7 (internal quotation marks

& citation omitted), and the court retained jurisdiction to issue Tembec II.

The United States makes the further argument that, even if the court had jurisdiction to

issue Tembec II, the decision and judgment should nevertheless be vacated based on the 30-day

automatic stay of execution of a judgment provided for in USCIT Rule 62(a).  See Def.'s

Supplemental Br. Resp. Ct.'s Order of Dec. 20, 2006 5 ("In any event, assuming . . . that this case

did not become moot until October 31, 2006, . . . the Court . . . should vacate its decision and

judgment in Tembec II because the judgment remained subject to the Rule 62(a) 30-day

automatic stay, and, thus, was not final . . . [on] October 31, 2006 . . . .") ("Def.'s Resp."); see

also USCIT R. 62(a) ("Except as stated herein or as otherwise ordered by the court, no execution

shall issue upon a judgment nor shall proceedings be taken for its enforcement until the

expiration of 30 days after its entry."). Specifically, Defendant states that "[b]ecause Tembec II

remained subject to the automatic stay, the Court's judgment had not yet altered the legal

relationship between the parties when Commerce issued the [October 31 Liquidation

Instructions]." Def.'s Resp. 5.[7] Put another way, Defendant argues that the judgment was not

legally effective until Plaintiffs were in a position to enforce it.

We find Defendant's argument unconvincing. When the court issues a decision that

"ends the litigation on the merits and leaves nothing for the court to do but execute the

judgment," Catlin v. United States, 324 U.S. 229, 233 (1945), that judgment is final and effective

as of the date of entry. See generally Fed. R. App. P. 4 (calculating appellate time periods based

on date district court judgment entered). As of entry, therefore, the judgment alters the legal

relationship between the parties. The effect of the judgment is unchanged by the automatic stay

of execution. Rather, USCIT Rule 62(a) simply provides the losing party with an opportunity to

evaluate its options and determine what actions, if any, it wishes to take before the time for filing

any of the various postjudgment motions expires. See Am. Family Mut. Ins. Co. v. Roth, No. 05-

---

[7]        As support for its claim that the 30-day automatic stay of execution prevents a
judgment from becoming final until the expiration of that period, Defendant cites Porco v.
Trustees of Indiana University, 453 F.3d 390 (7th Cir. 2006). In that case, the district court
entered a judgment instructing the Clerk to distribute funds that the defendant had deposited with
the Court. See id. at 393–94. When the automatic stay of execution expired, the Clerk
distributed the funds. The Court of Appeals for the Seventh Circuit upheld the Clerk's action,
noting that the appellant could have used the time provided by Federal Rule of Civil Procedure
62(a) to file a motion to stay the execution of the judgment until the completion of the appeal.
See id. Nothing in Porco supports Defendant's claim that the automatic stay prevents a judgment
from "altering the legal relationship between the parties." Def.'s Resp. 5.

C3839, 2007 WL 63983, at *5 n.8 (N.D. Ill. Jan. 10, 2007) ("The stay permits a party against whom the judgment has been entered to determine what course of action to follow . . . .").  That the automatic stay of execution has no effect on the finality or effectiveness of a judgment is supported by the observation that Rule 62(a) does not toll the time in which an appealing party must file its notice of appeal.  See Fed. R. App. P. 4(a)(1)(B) ("When the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered."); see also 28 U.S.C. § 1295(a)(5) (limiting jurisdiction of Court of Appeals for the Federal Circuit to, inter alia, "an appeal from a final decision of the United States Court of International Trade").  Thus, while it could not be enforced against Defendant until November 13, 2006, the judgment was legally final and effective as of its entry on October 13, 2006.  As a result, the stay provides no basis for vacatur of the Tembec II decision and judgment.

The foregoing notwithstanding, the court concludes that the Tembec II judgment should be vacated because no case or controversy remains as the result of prejudgment and postjudgment events.  As noted above, on October 12, 2006, by the exchange of letters, the Governments of the United States and Canada finalized their mutually-agreed-upon settlement of this dispute.  The terms of the Agreement provided for the issuance of liquidation instructions with respect to the enjoined entries upon the lifting of the West Fraser Mills injunctions.  See Agreement, Art. III(2)(b).  These instructions were issued on October 31, 2006.  Thus, Plaintiffs gained complete relief in fact on October 31, 2006, by reason of the parties having entered into the Agreement before the judgment was issued.

The facts of this case, then, are unlike those presented in U.S. Bancorp Mortgage Co. v.

Bonner Mall Partnership, 513 U.S. 18, 29 (1994) (holding that, absent exceptional circumstances, "mootness by reason of [a postjudgment] settlement does not justify vacatur of a judgment under review"). Here, although the October 31 Liquidation Instructions were not issued until after the judgment was entered, the instructions were the direct result of the prejudgment Agreement. Thus, this is not a situation where a losing party has abandoned its right to review by entering into a postjudgment settlement. See U.S. Bancorp, 513 U.S. at 26 ("Respondent won below. It is petitioner's burden, as the party seeking relief from the status quo of the . . . judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur. Petitioner's voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive, whatever respondent's share in the mooting of the case might have been."). Here, a party has not rendered its case unreviewable by its "own choice" upon surrendering its right to have an adverse judgment overturned. Id. at 25. Rather, this is a case where the terms of the Agreement were agreed to before the judgment was entered and, more importantly, before the parties knew which would prevail. The Agreement anticipated the removal of the West Fraser Mills injunctions, specifically requiring that "[n]o later than 3 days after a court of competent jurisdiction has modified any injunction against liquidation to permit liquidation and the return of deposits . . . [Commerce] shall instruct [Customs] . . . to liquidate the entries that were subject to that injunction in accordance with paragraph 8 of Annex 2C." Agreement, Art. III(2)(b). Once the panel hearing West Fraser Mills modified the injunctions in that case on October 27, 2006, thereby allowing the issuance of the second set of instructions, the terms of the Agreement could be fulfilled, and Plaintiffs could receive total relief. This result having been achieved in accordance with the terms of the prejudgment

Agreement, we find it appropriate to vacate the judgment in <u>Tembec II</u>.

That neither party has asked the court to vacate its judgment based on the Agreement does not bar the court from doing so <u>sua</u> <u>sponte</u>.  <u>See</u> USCIT R. 60(b) ("On motion of a party or upon its own initiative and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . ."); <u>see also</u> <u>Fort Knox Music Inc. v. Baptiste</u>, 257 F.3d 108, 110–11 (2d Cir. 2001) ("We note parenthetically that there can be no question that the district court had the power to vacate its original judgment . . . .  [N]othing forbids the court to grant such relief *sua sponte*.").

Because the court finds that the issues in <u>Tembec II</u> were decided within the context of a live controversy, however, the court will not withdraw its decision.  When determining whether to vacate a prior decision, the court cannot ignore the substantial public interest in the establishment of judicial precedent.  "Judicial precedents are presumptively correct and valuable to the legal community as a whole.  They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." <u>U.S. Bancorp</u>, 513 U.S. at 26 (internal quotation marks & citation omitted).  In addition, the Court of Appeals for the Federal Circuit has recognized that vacatur of a judgment does not necessarily require vacatur of the court's decision.  Thus, when asked by an appealing party to vacate both the lower court's judgment and decision, the Federal Circuit stated that because the "opinion is merely an explanation for the now-vacated judgment, there is no need to separately vacate the opinion." <u>Jilin Henghe Pharm. Co. v. United States</u>, 123 F. App'x 402, 403 (Fed. Cir. 2005) (not published in the Federal Reporter).

Finally, the court's finding that this matter was not moot on October 12, 2006, leads to

the additional conclusion that Defendant's October 12, 2006, motion to dismiss for mootness is without merit. Because this case was still alive on October 12, 2006, Defendant's motion was premature. Moreover, it is apparent that Defendant has not been precluded from having its arguments heard by the court. The court, therefore, having considered the arguments raised by Defendant in its motion to dismiss and having found them meritless, concludes that it committed no error of law by declining to consider the motion prior to issuing Tembec II.

### IV. Conclusion

Based on the foregoing, it is hereby

**ORDERED** that Defendant's motion to dismiss pursuant to USCIT Rule 12(b)(1) is denied;

**ORDERED** that Defendant's motion for reconsideration and to vacate Tembec II pursuant to USCIT Rule 59 is denied; and it is further

**ORDERED** that the Tembec II judgment is vacated.

/s/Jane A. Restani
Jane A. Restani, Chief Judge

/s/Judith M. Barzilay
Judith M. Barzilay, Judge

/s/Richard K. Eaton
Richard K. Eaton, Judge

Dated this 28th day of February, 2007
New York, NY