Slip Op. 09-92

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                  :
CANADIAN WHEAT BOARD              :
and the GOVERNMENT OF CANADA,     :
                                  :
      Plaintiffs,                 :
                                  : Before: Richard K. Eaton, Judge
      and                         :
                                  : Consol. Court No. 07-00058
GOVERNMENT OF ALBERTA,            :
GOVERNMENT OF ONTARIO, and        :
GOVERNMENT OF SASKATCHEWAN,       :
                                  :
      Plaintiff-Intervenors,      :
                                  :
      v.                          :
                                  :
UNITED STATES and the UNITED      :
STATES DEPARTMENT OF COMMERCE,    :
                                  :
      Defendants.                 :
                                  :
```

OPINION

[Defendants' motion for reconsideration denied; plaintiffs' and
plaintiff-intervenors' motion for reconsideration granted]

Dated: September 1, 2009

*Steptoe & Johnson LLP* (*Mark A. Moran*, *Jamie B. Beaber*, and
*Matthew S. Yeo*), for plaintiff Canadian Wheat Board.

*Weil, Gotshal & Manges LLP* (*M. Jean Anderson, John M. Ryan*,
and *Peter J.S. Kaldes*), and *Wilmer Cutler Pickering Hale and Dorr
LLP* (*Seth P. Waxman*, *Randolph D. Moss, Mark C. Fleming,* and
*Danielle G. Spinelli*), for plaintiff Government of Canada.

*Arnold & Porter LLP* (*Lawrence A. Schneider*), for plaintiff-
intervenor Government of Alberta.

*Hogan & Hartson LLP* (*Mark S. McConnell, H. Deen Kaplan,* and
*Jonathon T. Stoel*), for plaintiff-intervenor Government of
Ontario.

*Cameron & Hornbostel LLP* (*Michele Sherman Davenport*), for

plaintiff-intervenor Government of Saskatchewan.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Scott D. McBride*), of counsel, for defendants.

Eaton, Judge:  This matter is before the court on the motion of defendants, the United States and the United States Department of Commerce ("Commerce" or "the Department"), for reconsideration, and the joint motion of plaintiffs, Canadian Wheat Board ("CWB") and the Governments of Canada[1] (collectively, "plaintiffs") for clarification.  *See* Defs.' Mot. Reconsideration ("Defs.' Mot."); Mot. Clarification ("Pls.' Mot."). These motions follow the court's decision in *Canadian Wheat Board v. United States*, 32 CIT __, 580 F. Supp. 2d 1350 (2008) ("*Wheat Board II*"),[2] which held: (1) that Commerce must liquidate all of CWB's pre-*Timken* notice entries, whose liquidation has been suspended,

---

[1]  Plaintiff the Federal Government of Canada originally filed a suit under Court No. 07-00059.  That action was consolidated with this action under Consol. Court No. 07-00058.  Prior to consolidation, the Federal Government of Canada filed a consent motion to intervene in Court No. 07-00058, as did the governments of the provinces of Saskatchewan, Alberta, and Ontario.  Each was granted plaintiff-intervenor status in Consol. Court No. 07-00058.  In this opinion, and in *Canadian Wheat Board v. United States*, 32 CIT __, 580 F. Supp. 2d 1350 (2008), the Federal Government of Canada together with the governments of Saskatchewan, Alberta, and Ontario are referred to as the "Governments of Canada."

[2]  Familiarity with the court's October 20, 2008 opinion is presumed.

without regard to duties; and (2) that the Governments of Canada lacked standing to sue under Article III of the Constitution.

As set forth at length in *Wheat Board II*, jurisdiction lies under 28 U.S.C. § 1581(i)(4). *See* 32 CIT at __, 580 F. Supp. 2d at 1357-64; *see also Canadian Wheat Bd. v. United States*, 31 CIT __, 491 F. Supp. 2d 1234 (2007) ("*Wheat Board I*"). Because the motions ask the court to consider important questions not previously addressed, it will treat them both as motions for reconsideration.[3] For the following reasons, defendants' motion for reconsideration is denied, and plaintiffs' motion for reconsideration is granted.

## STANDARD OF REVIEW

The granting of a motion for reconsideration is within the court's sound discretion. *See Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990); *Kerr-McGee Chem. Corp. v. United States*, 14 CIT 582, 583 (1990) (not reported in the Federal Supplement).

---

[3] *See* Pls.' Mot. 3 n.1 ("Should this Court conclude that this issue is more properly addressed by means of a motion for modification or reconsideration, we respectfully request that the Court treat this submission as such a motion.").

DISCUSSION

I.   Defendants' Motion

In *Wheat Board II* the court considered questions relating to the liquidation of CWB's entries of hard red spring [HRS] wheat from Canada.  By its motion the United States, on behalf of Commerce, makes a new argument that the court was statutorily barred from hearing plaintiffs' claims.  In making its argument, defendants assert that "the statute upon which the Court concluded that Commerce had suspended liquidation of entries of hard red spring wheat from Canada . . . [19 U.S.C. § 1516a(g)(5)(C)[4]], expressly prohibits any judicial action with

---

[4]  This provision states:

> (C) Suspension of Liquidation
>
> (i) Notwithstanding the provisions of subparagraph (B), in the case of a determination described in clause (iii) or (vi) of subsection (a)(2)(B) of this section for which binational panel review is requested pursuant to article 1904 of the NAFTA or of the Agreement, the administering authority, upon request of an interested party who was a party to the proceeding in connection with which the matter arises and who is a participant in the binational panel review, shall order the continued suspension of liquidation of those entries of merchandise covered by the determination that are involved in the review pending the final disposition of the review.

19 U.S.C. § 1516a(g)(5)(C)(i).  As set out in *Tembec, Inc. v. United States*, 30 CIT 1519, 1524-25, 461 F. Supp. 2d 1355, 1360-61 (2006), *judgment vacated by Tembec, Inc. v. United States*, 31 CIT __, 475 F. Supp. 2d 1393 (2007), this subsection was designed to provide an injunction-like suspension of liquidation upon an appeal to a NAFTA binational panel of two types of final
(continued...)

respect to Commerce's actions concerning the statutory suspension of liquidation."  Defs.' Mot. 4 (citing 19 U.S.C. § 1516a(g)(5)(C)(iv)[5]) (internal citation omitted). Central to defendants' claim are their assertions that liquidation of CWB's merchandise was suspended pursuant to the provisions of 19 U.S.C. § 1516a(g)(5)(C) and that the court in *Wheat Board II* unlawfully reviewed Commerce's "actions" taken pursuant to that subsection. Thus, defendants' motion is dependent upon two sets of alleged facts: (1) that the court in *Wheat Board II* found that liquidation of CWB's merchandise had been suspended under § 1516a(g)(5)(C); and (2) that, in its *Wheat Board II* decision, the court was reviewing actions taken by Commerce pursuant to § 1516a(g)(5)(C).

Plaintiffs dispute both of these assertions.  First, plaintiffs insist:

---

[4](...continued)
determinations made by Commerce so that liquidation results, in a NAFTA context, would parallel those that would result had an appeal been taken to this Court, i.e., liquidation would be made in accordance with the final NAFTA panel results.

[5]  Title 19 U.S.C. § 1516a(g)(5)(C)(iv) provides that:

> Any action taken by the administering authority or the United States Customs Service under this subparagraph shall not be subject to judicial review, and no court of the United States shall have power or jurisdiction to review such action on any question of law or fact by an action in the nature of mandamus or otherwise.

> [A]s the United States is well aware, the CWB entries at issue in this action were never suspended pursuant to section 1516a(g)(5)(C). That section provides for "continued suspension of liquidation" of entries during an appeal to a NAFTA panel of the results of an administrative review or scope determination. The hard red spring wheat entries at issue here were never the subject of an administrative review or scope determination. Rather, the entries were suspended pursuant to 19 U.S.C. § 1675 when the CWB requested an administrative review and, subsequently, by this Court's injunction when the request for administrative review was withdrawn. Because the entries at issue were not suspended under section 1516a(g)(5)(C), the limitation on judicial review of continued suspensions in subparagraph (C)(iv) does not apply.

Pls.' Resp. Defs.' Mot. Reconsideration ("Pls.' Resp.") 2 (citations omitted). Thus, plaintiffs argue that defendants are factually incorrect in claiming that liquidation of CWB's merchandise was suspended pursuant to § 1516a(g)(5)(C).

As to defendants' contention that *Wheat Board II* purported to review actions of Commerce made pursuant to 19 U.S.C. § 1516a(g)(5)(C), plaintiffs maintain:

> [T]he United States' argument fails even on its own (counterfactual) terms. Section 1516a(g)(5)(C)(iv) operates only to bar judicial review of action taken by Commerce under 1516a(g)(5)(C), *i.e.*, action taken to continue suspension of liquidation. It would not oust this Court of jurisdiction over actions under 28 U.S.C. § 1581(i) like this one, which do not challenge the continued suspension of liquidation, but rather Commerce's failure to liquidate entries in accordance with the final NAFTA panel decision in the case.

Pls.' Resp. 2-3.  Put another way, plaintiffs claim that § 1516a(g)(5)(C)(iv) prohibits judicial review only of specified actions taken by Commerce pursuant to § 1516a(g)(5)(C)(i). According to plaintiffs, in this case no such actions were taken and hence the court was not reviewing any action taken under § 1516a(g)(5)(C)(i).

The court finds that plaintiffs are correct in both of their contentions.  First, despite defendants' claims to the contrary, in *Wheat Board II* liquidation of CWB's merchandise was not suspended pursuant to 19 U.S.C. § 1516a(g)(5)(C).  Rather, liquidation was suspended or enjoined pursuant to other provisions of law.  *See Wheat Board II*, 32 CIT at __, 580 F. Supp. 2d at 1355-56 ("Plaintiff CWB's entries were made in September 2004 . . . .  Liquidation of these entries was suspended on October 31, 2005[6], when CWB filed a request for administrative review of the AD/CVD Orders . . . .  Thereafter, on February 26, 2007, CWB withdrew its request for administrative review.  That same day, CWB moved to restrain temporarily and enjoin preliminarily the liquidation of its merchandise to allow it to litigate the merits of its case . . . .") (citations

---

[6] A request for an administrative review results in the continuation of the suspension of liquidation. *See Tembec, Inc. v. United States*, 30 CIT __, 461 F. Supp. 2d 1355, 1361 (2006), *judgment vacated by Tembec, Inc. v. United States*, 31 CIT __, 475 F. Supp. 2d 1393 (2007).

omitted).  That liquidation of CWB's entries was never suspended pursuant to § 1516a(g)(5)(C) is apparent since that subsection provides for an injunction-like suspension of liquidation following a final determination of an administrative review or scope determination.  Here, there was no scope determination and there was also no administrative review because the request for such review was withdrawn.  *See Wheat Board II*, 32 CIT at __, 580 F. Supp. 2d at 1356.

Next, defendants argue that the court was barred from reviewing the effect of its notice of revocation, (Antidumping Duty Investigation and Countervailing Duty Investigation of HRS Wheat from Canada, 71 Fed. Reg. 8,275 (Dep't of Commerce Feb. 16, 2006) ("Notice of Revocation")),[7] because 19 U.S.C. § 1516(a)(g)(5)(C)(iv) expressly precludes judicial review of "any action" taken by Commerce "under this subparagraph."  For the court, the operative word is "action."  *See* Defs.' Mot. 6 (citing 19 U.S.C. § 1516 (a)(g)(5)(C)(iv)).  An examination of the subparagraph reveals that the "action" that Commerce is authorized to undertake under § 1516(a)(g)(5)(C)(i) is to "order the continued suspension of liquidation of those entries of merchandise" that are the subject of a completed administrative

_____

[7]  On February 16, 2006, the Department published the Notice of Revocation, which "revok[ed] the countervailing duty order and antidumping duty order on [HRS] wheat from Canada . . . ." Notice of Revocation, 71 Fed. Reg. at 8,275.

review or scope determination.  *See* 19 U.S.C.

§ 1516(a)(g)(5)(C)(i).  It is clear that the purpose of this

subsection is to bar this Court from reviewing decisions of

Commerce in a precise set of circumstances relating to the

continuation of a suspension of liquidation following the

completion of two specific administrative procedures.  These

continuations of the suspension of liquidation are the only

actions authorized by the subsection.  *See* 19 U.S.C.

§ 1516a(g)(5)(C)(i); 19 U.S.C. §§ 1516a(2)(B)(iii) and (vi).  In

this case, no party has challenged any action relating to the

continued suspension of liquidation under § 1516a(g)(5)(C), nor

could they, simply because there was no suspension of liquidation

under that subsection.

Defendants endeavor to bolster their position by, for the

first time, recharacterizing the Notice of Revocation as a

"decision not to grant the benefit of section 1516a(g)(5)(C)

suspensions to certain entries of subject merchandise."  Defs.'

Mot. 6.  This recharacterization does not save defendants'

argument.  First, as noted, under the facts of this case there

was no suspension of liquidation under 19 U.S.C.

§ 1516a(g)(5)(C).  Second, this "decision," if in fact there ever

was one, is simply not an action authorized by § 1516a(g)(5)(C).

Finally, the court notes language in *Wheat Board II* that may

have led to a misunderstanding of the role played by 19 U.S.C.

§ 1516a(g)(5)(C) in that decision.  First, the court's assertion

that, "[f]or CWB, the exception found in § 1516a(g)(5)(C)

applies," (*Wheat Board II*, 32 CIT at __, 580 F. Supp. 2d at

1367), is a misstatement to the extent it suggests that CWB

relied on the suspension of liquidation found in § 1516a(g)(5)(C)

in its arguments.  As noted, the liquidation of CWB's merchandise

was the result of other provisions of law.

In addition, in reaching its conclusions in *Wheat Board II*,

the court relied on the reasoning found in *Tembec, Inc. v. United

States*, 30 CIT 1519, 461 F. Supp. 2d 1355 (2006) ("*Tembec II*"),

*judgment vacated by Tembec, Inc. v. United States*, 31 CIT __, 475

F. Supp. 2d 1393 (2007) ("*Tembec III*").[8]  In that case,

suspension of liquidation of some of the entries at issue was

accomplished pursuant to § 1516a(g)(5)(C).  As has been noted,

however, liquidation of none of CWB's entries was suspended

pursuant to § 1516a(g)(5)(C), and plaintiffs have never asserted

otherwise.  Rather, the reason that 19 U.S.C. § 1516a(g)(5)(C)

had such a prominent place in both *Tembec II* and *Wheat Board

II* is that its language and legislative history demonstrate

Congress's intent that a suspension of liquidation preserves

entries for liquidation in accordance with a NAFTA panel's final

---

[8]  The *Tembec III* Court vacated as moot its prior judgment
in *Tembec II*, but, having found "that the issues in *Tembec II*
were decided within the context of a live controversy," kept the
*Tembec II* decision in place.  *Tembec III*, 31 CIT at __, 475 F.
Supp. 2d at 1402-03.

determination.  In order to make this point, the court in *Wheat Board II* referred to *Tembec II* by stating that (1) the court "expressly adopts the *Tembec II* panel's analysis," and (2) the court adopted *Tembec II*'s observation "that the 'continued' suspension of liquidation provided for in § 1516a(g)(5)(C) 'acts as the equivalent of an injunction against liquidation and thus halts liquidation until the suspension expires.'"  *Wheat Board II*, 32 CIT at __580 F. Supp. 2d at 1368-70 (citation omitted); *see also Tembec II*, 30 CIT at __, 461 F. Supp. 2d at 1365-66 ("Congress, having intended parallel remedies, intended that the suspension of liquidation provided for in § 1516a(g)(5)(C) would provide the same result following a NAFTA panel decision, as would an injunction issued by this Court.").

The purpose of citing to these portions of *Tembec II* was to make the point that a suspension of liquidation under § 1516a(g)(5)(C) would preserve entries for liquidation in accordance with a final NAFTA panel ruling.  It is, however, the fact of suspension that commands this result, not the means.  In other words, suspension for any reason would have the same effect as suspension under § 1516a(g)(5)(C).  As a result, even though none of the entries that were the subject of *Wheat Board II* were suspended in accordance with § 1516a(g)(5)(C), because liquidation was suspended under other provisions, they must be liquidated in accordance with the NAFTA panel's final ruling.

With this further explanation, the court finds that the holding and reasoning of *Wheat Board II* remain intact, i.e., "Commerce is obligated to liquidate all of CWB's pre-*Timken* Notice entries, whose liquidation has been suspended, without regard to duties." *See Wheat Board II*, 32 CIT at __, 580 F. Supp. 2d at 1370. Further, "[t]his result is demanded by both logic as well as the statute. That is, because the subject imports caused no injury during any time relevant to this inquiry, CWB should owe no duties." *Id*. at __, 580 F. Supp. 2d at 1370. Accordingly, defendants' motion is denied.

## II. Plaintiffs' Motion

Plaintiffs ask the court to address that portion of *Wheat Board II* that dismissed the claims of the Governments of Canada for lack of Article III standing. *See* Pls.' Mot. 2; *see also Wheat Board II*, 32 CIT at __, 580 F. Supp. 2d at 1364-1366. The Canadian government plaintiffs do not dispute their dismissal as plaintiffs for lack of Article III standing, however, they seek to remain in this case as plaintiff-intervenors. Pls.' Mot. 2. Plaintiffs argue that when "an intervenor brings the same claims and seeks the same relief as the original plaintiff, the intervenor need not independently have Article III standing." Pls.' Mot. 5. In other words, plaintiffs argue that although any independent legal action brought by the Governments of Canada

might be dismissed for lack of Article III standing, they should not be dismissed from CWB's case because they are properly plaintiff-intervenors.  For the reasons that follow, the court finds that the Governments of Canada may take part in this case as permissive plaintiff-intervenors.

    A.   Background

    In *Wheat Board II* the court dismissed the Federal Government of Canada's complaint for lack of standing.  *See Wheat Board II*, 32 CIT at __, 580 F. Supp. 2d at 1366.  In doing so the court held that none of the Governments of Canada had demonstrated "injury-in-fact" independent of CWB's claimed injury.  *Wheat Board II*, 32 CIT at __, 580 F. Supp. 2d at 1366.  As plaintiffs point out, however, *Wheat Board II* examined Article III standing to bring separate actions, but not in the context of participating in the case as intervenors.  *See* Pls.' Mot. 2

    B.   Statutory Authorization and Intervention

    Intervention before this Court is authorized by statute. *See* 28 U.S.C. § 2631(j)(1) ("Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action . . . .").  As noted in *Ontario Forest Industr. Assoc. v. United States*, 30 CIT __, __, 444 F. Supp. 2d

1309, 1322 (2006), this statute has been given a broad construction: "The phrase 'adversely affected or aggrieved,' which mirrors the language in numerous statutes, including of Administrative Procedure Act, 5 U.S.C. § 702, represents a 'congressional intent to cast the [intervention net] broadly – beyond the common-law interests and substantive statutory rights' traditionally known to law. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 19 (1998))."

Each Canadian entity has alleged an interest sufficient to demonstrate that it has been "affected" or "aggrieved" by Commerce's action within the meaning of 28 U.S.C. § 2631(j)(1). Cf. Mot. Intervene of Gov't of Canada 3 (". . . as a NAFTA Party and frequent party to U.S. AD/CVD actions against Canadian products, the [Federal] Government of Canada has broad concerns with the policy and practice of the United States of continuing to apply an AD or CVD order, to unliquidated pre-*Timken* Notice entries despite the invalidation through NAFTA binational panel review of an agency determination that was an essential underpinning of the order."). Although not NAFTA parties, the complaints of the governments of Saskatchewan, Ontario and Alberta make allegations similar to those of the Federal Government of Canada.

C.  Intervention Under Rule 24

USCIT Rule 24 ("Rule 24"), governs the right to intervene in actions brought before this Court.  *See* USCIT Rule 24.  Rule 24 applies to intervention as a matter of right and to permissive intervention.[9] *Id*.  Here, the Governments of Canada move in the alternative for intervention as of right or by permission.  *See* Pls.' Reply Supp. Mot. Clarification ("Pls.' Reply") 7, 7 n.3. Because it finds that the Governments of Canada may proceed by permission, the court will address permissive intervention only.

In March of 2007 the Federal Government of Canada and the provinces of Alberta, Ontario and Saskatchewan each filed motions to intervene in the case brought by CWB.  *See* Consent Mot. Intervene as Plaintiff-Intervenor by Gov't of Canada; Consent Mot. Intervene by Gov't of Alberta; Consent Mot. Intervene by Gov't of Ontario; Consent Mot. Intervene as Plaintiff-Intervenor by Gov't of Saskatchewan.  Each of these motions was accompanied by a complaint. *Id.* Each motion was consented to by defendants, although this consent stated that it was for "procedural convenience . . . , without waiving any argument concerning

---

[9]    USCIT Rule 24(b) states in pertinent part:

> (b) Permissive Intervention
>
> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . . .

standing or any other issue." *See*, *e.g.*, Consent Mot. Intervene as Plaintiff-Intervenor by Gov't of Canada 4.  While defendants claim that the Governments of Canada may not proceed in this case as intervenors because they lack Article III standing, defendants have made no argument that they have not satisfied the requirements of USCIT Rule 24.  The granting of permissive intervention is discretionary with the Court.  *Manuli Autoadesivi, S.p.A. v. United States*, 9 CIT 24, 26, 602 F. Supp. 96, 98 (1985).

Permissive intervention under USCIT Rule 24(b) requires that an applicant's claim and that of the main action share a common question of law or fact.  USCIT Rule 24(b).  Here, the facts of the case are necessarily shared by all entities interested in the case.  In addition, the respective complaints of the Governments of Canada are, in every material respect, the same as that of CWB.  That being the case, the requirements of USCIT Rule 24(b) are satisfied.

As noted, defendants made no argument that the Governments of Canada failed to qualify as permissive intervenors at the time they consented to their intervention.  Even now, defendants' only claim is that intervenors must have Article III standing in order to intervene.  In other words, defendants appear to concede that the Governments of Canada have met the requirements of 28 U.S.C. § 2631(j)(1) and of USCIT Rule 24(b).

D.  Article III Standing

As far as can be determined, the question of whether independent Article III standing is required for permissive intervenor status under USCIT Rule 24 or for that matter under Fed. R. Civ. P. 24[10] is a question of first impression for the Federal Circuit.  *See Landmark Land Co. v. FDIC*, 256 F.3d 1365, 1382 (Fed. Cir. 2001) ("*Landmark*").  As will be seen, the other Circuits are split on this question.

For its part, the United States Supreme Court appears to favor a finding that Article III standing is not required for an intervenor to participate in an action.  While no case is directly on point, the Court has addressed questions related to the issue.  *See Diamond v. Charles*, 476 U.S. 54, 68 (1986) ("*Diamond*").  In *Diamond*, several physicians challenged the constitutionality of an Illinois abortion statute.  *Id*. at 56-57. The State of Illinois defended the statute's constitutionality, and a pediatrician who supported the law filed a motion to intervene on the side of the State.  *Id*. at 57.  Thereafter, the district court enjoined certain provisions of the Illinois statute and the Court of Appeals for the Seventh Circuit affirmed. *Id.* at 61.  The state of Illinois did not file a

---

[10]    Because both the Federal Rules of Civil Procedure and the rules of this Court are undergoing drafting revisions, the text of Fed. R. Civ. P. 24 has newly revised language while USCIT Rule 24 retains the old wording.  At the time the Governments of Canada made their motions to intervene the rules were, in all material respects, the same.

petition for a writ of certiorari, but the intervening
pediatrician did seek to appeal to the Supreme Court.  *Id.*

The Court held that, because the State of Illinois did not
appeal the circuit court's decision, there was no longer an
Article III "case" or "controversy" to be heard.  *Id.* at 63-64.
In reaching its conclusion, the Court found that intervention,
whether permissive or as of right, does not confer a status
sufficient to keep a case alive absent an independent showing of
Article III standing.  *Id.* at 68 ("Although intervenors are
considered parties entitled, among other things, to seek review
by this Court, an intervenor's right to continue a suit in the
absence of the party on whose side intervention was permitted is
contingent upon a showing by the intervenor that he fulfills the
requirements of Art. III.") (citations omitted); *see also id.* at
68, n.21 (noting the split of authority among circuit courts on
this issue).

In deciding *Diamond*, the Court explicitly stated that it was
not deciding whether those seeking to intervene on the side of a
party that has demonstrated Article III standing must show that
they too satisfy the case or controversy requirement.

> We need not decide today whether a party
> seeking to intervene before a District Court
> must satisfy not only the requirements of
> Rule 24(a)(2)[11], but also the requirements of
> Art. III.   To continue this suit in the

---

[11]     This subsection is "Intervention of Right."

> absence of Illinois, Diamond himself must
> satisfy the requirements of Art. III. The
> interests Diamond asserted before the
> District Court in seeking to intervene
> plainly are insufficient to confer standing
> on him to continue this suit now.

*See Diamond*, 476 U.S. at 68-69.  Nonetheless, the Court stated

that: "[h]ad the State sought review, . . . [the pediatrician],

as an intervening defendant below, also would be entitled to seek

review, enabling him to file a brief on the merits, and to seek

leave to argue orally."  *Id.* at 64.  In addition, the Court

observed that the "ability to ride 'piggyback' on the State's

undoubted standing exists only if the State is in fact an

appellant before the Court; in the absence of the State in that

capacity, there is no case for Diamond to join."  *Id.* at 64.  In

other words, the Supreme Court appears to accept the idea that,

if the party with which it is aligned has demonstrated Article

III standing, an intervenor, despite the inability to demonstrate

independent Article III standing, may participate in the case.

Likewise, in *Trbovich v. United Mine Workers of America*, 404

U.S. 528 (1972) ("*Trbovich*"), the Supreme Court allowed a

plaintiff-intervenor to remain in a case even though his

participation as a plaintiff was barred by statute.[12]  Thus,

---

[12]  The Secretary of Labor had instituted the action under
29 U.S.C. § 402(b) of the Labor Management Reporting and
Disclosure Act ("LMRDA").  *Trbovich*, 404 U.S. 528 at 529, 531.
("This Court has held that § 403 [of LMRDA] prohibits union
members from initiating a private suit to set aside an
election.").  Thus, the intervenor had no independent standing to
(continued...)

while the intervenor could not independently satisfy the case or controversy requirement, the Court found that he too could "piggyback" on the standing of another so long as the intervention was limited to the claims presented by that party.

### i.  Federal Circuit Authority

As noted, the only Federal Circuit case that touches on this issue is *Landmark*, 256 F.3d at 1365.  In *Landmark*, the Federal Deposit Insurance Corporation ("FDIC") sought to intervene in an action brought against the United States.  *Id*. at 1379-80.  The trial court granted FDIC's motion to intervene.  *Id*. at 1380.  On appeal, the Federal Circuit dismissed the FDIC as an intervenor because its claims were unrelated to those of the party on whose side it sought to intervene.  *Id*. at 1382.

As to Article III standing, the Court found a lack of a justiciable controversy between the FDIC and defendant the United States because "[H]ere at no time were the FDIC and the United States truly adverse parties."  *Landmark*, 256 F. 3d at 1380.  As a result, the FDIC could not demonstrate that it had standing under Article III.  The Federal Circuit, however, went on to observe:

> The FDIC intervened in this case.  Whether an
> intervening party must satisfy the case-or-
> controversy requirement independently of the

---

[12](...continued)
sue.

> claims brought by the other plaintiffs is an
> open question.  We conclude, however, that
> because the FDIC's claims are unrelated to
> those brought by [the plaintiff], it would be
> improper to permit the FDIC to proceed given
> the lack of a justiciable controversy with
> respect to the claims.

*Id.* (citations omitted).  Thus, the Federal Circuit in *Landmark*

has left open the possibility that an intervenor need not satisfy

the Article III case or controversy requirement so long as its

claims are the same as those of a party that has satisfied the

test.


            ii.  Circuits Holding That An Intervening Party Does
                 Not Need To Have Independent Article III Standing

     Unlike the Federal Circuit, other Circuits have taken a

definitive position on this issue.  In *United States Postal*

*Service v. Brennan*, ("*Brennan*"), 579 F.2d 188, 190 (2d Cir.

1978), the Second Circuit stated that intervening parties need

not establish independent standing, so long as there is a case or

controversy within the meaning of Article III between the

plaintiff and defendant.  *Brennan* involved a challenge to the

constitutionality of the Private Express Statutes[13] and

applicable Postal Service Regulations.  The dispute arose when

the United States Postal Service filed an action to permanently

---

[13]  The statutes limited the ability of private parties to compete with the United States mail.  *See Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 519 (1991).

enjoin the Brennans from running a mail delivery business. *Id.*
The National Association of Letter Carriers ("NALC"), a union
representing Postal Service employees, filed a motion to
intervene. The district court denied the motion because NALC
could not demonstrate Article III standing. *Id.*

On appeal, the Second Circuit affirmed the denial[14] of
NALC's motion to intervene but disagreed with the district court
on the significance of standing. *Id.* The Court stated that the
question of standing was to be considered in the framework of
Article III, which restricts judicial power to "cases" and
"controversies." *Id.* The Court went on to observe: "[t]he
existence of a case or controversy having been established as
between the Postal Service and the Brennans, there was no need to
impose the standing requirement upon the proposed intervenor."
*Id.* (citations omitted).

In *Ruiz v. Estelle,* 161 F.3d 814, 830 (5th Cir. 1998)
("Ruiz"), the Fifth Circuit similarly held that Article III does
not require intervenors to possess independent standing "where
the intervention is into a subsisting and continuing Article III
case or controversy . . . ." The *Ruiz* Court reasoned that, once
a valid Article III case or controversy is present, a court's
jurisdiction vests and the presence of additional parties,

---

[14] The Court of Appeals found that NALC, having intervened as a matter of right under Fed. R. Civ. P. 24(a)(2) failed to demonstrate "any inadequacy of representation." *Brennan*, 579 F.2d at 191.

although they alone could not independently satisfy the Article III requirements, does not affect the jurisdiction that is already established.  *Id*. at 832 (footnote omitted).

Recently, the Tenth Circuit also held that parties seeking to intervene under Rule 24 need not establish Article III standing, "so long as another party with constitutional standing on the same side as the intervenor remains in the case."  *San Juan County, Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (quotation and citation omitted).

The Sixth and Eleventh Circuits have echoed the view that an intervening party need not establish standing under Article III. *See Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991); *Dillard v. Chilton County Comm'n*, 495 F.3d 1324, 1336 (11th Cir. 2007).

>        iii. Circuits Holding That An Intervening Party Must
>             Establish Independent Article III Standing In
>             Order To Intervene In An Action

By way of contrast, the Seventh, Eighth and D.C. Circuits have held that an intervening party must establish Article III standing in addition to meeting Rule 24's intervention requirements.  *See Jones v. Prince George's County*, *Maryland*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (per curiam) ("*Jones*"); *Fund for Animals, Inc., v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003) ("*Fund for Animals*"); *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th

Cir. 1996) ("*Mausolf*"); *Solid Waste Agency v. United States Army Corps of Eng'rs*, 101 F.3d 503, 507 (7th Cir. 1996) ("*Solid Waste Agency*").  In articulating their reasoning, these Circuits have found that intervenors must establish Article III standing because they seek to participate on an equal footing with the original parties to the action.  *See, e.g., Mausolf*, 85 F.3d at 1300 ("An Article III case or controversy is one where all parties have standing, and a would-be intervenor, because he seeks to participate as a party, must have standing as well.");  *see also Fund for Animals*, 322 F.3d at 731-732; *Jones*, 348 F.3d at 1017; *Solid Waste Agency*, 101 F.3d at 507.

E.   The Governments of Canada Have Standing as Plaintiff-Intervenors

Plaintiffs' motion asks the court to permit the Governments of Canada to remain in this action as plaintiff-intervenors.  *See* Pls.' Reply Mem. 7, 7 n.3.  As noted, plaintiffs contend that because they are bringing "precisely the same claims and seek precisely the same relief" as CWB, they need not establish independent Article III standing, and should be allowed to continue in the ongoing litigation as plaintiff-intervenors. Pls.' Mot. 7.

The court finds that the Governments of Canada may participate in the ongoing litigation as permissive plaintiff-intervenors.  This conclusion results from the clear indication

of the Supreme Court in *Diamond* that this would be the outcome

should it address the issue, and from the Federal Circuit

decision in *Landmark*, suggesting this as a possible result.  In

reaching its conclusion the court relies, in particular, on the

discussion in *Ruiz*:

> We find the better reasoning in those cases
> which hold that Article III does not require
> intervenors to possess standing.  These cases
> recognize that the Article III standing
> doctrine serves primarily to guarantee the
> existence of a "case" or "controversy"
> appropriate for judicial determination. . . .
>
> Once a valid Article III case-or-controversy
> is present, the court's jurisdiction vests.
> The presence of additional parties, although
> they alone could independently not satisfy
> Article III's requirements, does not of
> itself destroy jurisdiction already
> established.

161 F.3d at 832 (citations and footnote omitted).

In other words, Article III establishes the jurisdictional

requirement that the court address cases or controversies.  Once

that jurisdictional requirement is met, so long as the parties

with standing remain in the case, the court's jurisdiction

continues regardless of the presence of intervenors.  Here, the

court has a case or controversy before it brought by CWB against

the United States and Commerce.  The Governments of Canada have

met the requirements of USCIT Rule 24(b) and their claims and

prayers for relief are identical to those of CWB on whose side

they seek to intervene.  No party would be burdened by granting

the Governments of Canada plaintiff-intervenor status, nor would the court.  Therefore, the Governments of Canada may remain in this case as permissive plaintiff-intervenors despite being unable to demonstrate independent Article III standing.


F.  Remedies

Finally, in *Wheat Board II* the court directed the parties to "consult and jointly submit to the court the form of a judgment comporting with this opinion . . . ."  *Wheat Board II*, 32 CIT at __, 580 F. Supp. 2d at 1371.  While this instruction has since been modified by a subsequent court order,[15] a dispute has arisen concerning the relief the order should grant.  CWB and the Governments of Canada insist that the judgment should "award all of the injunctive and declaratory relief requested by CWB and the Canadian federal and provincial governments as plaintiff-intervenors." Pls.' Mot. 8.  Plaintiffs argue that this relief should include a declaration that:

> The Tariff Act of 1930, as amended, requires unliquidated entries to be liquidated in accordance with the final and conclusive results of binational panel review, and 19 U.S.C. § 1516a(g)(5)(B) does not require or permit such entries to be liquidated in accordance with an ITC or Commerce determination finally and conclusively invalidated pursuant to binational panel review.

---

[15]     *Canadian Wheat Board v. United States*, Consol. Ct. No. 07-00058 (Nov. 21, 2008) (order granting defendants' motion for relief from filing a judgment).

Pls.' Mot. 8, App. A at 4.

Plaintiffs insist that this remedy is appropriate because "If the judgment does not clearly grant declaratory relief, Defendants may contend that the judgment has no bearing on their conduct in future proceedings, resulting in future attempts to liquidate entries in accordance with AD or CVD determinations invalidated by binational panels."  Pls.' Mot. 8.  In other words, plaintiffs would have the court grant declaratory relief for use in future disputes in the event a situation arises with facts that are substantially the same as those presented here. The defendants oppose declaratory relief.[16]

The authority to grant a declaratory judgment is found in the Declaratory Judgment Act, (28 U.S.C. § 2201(a)), and the rules of this Court.  *See* 28 U.S.C. § 2201(a) ("[A]ny court of the United States, upon the finding of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); USCIT Rule 57.

The Supreme Court has explained that "[w]hile the courts should not be reluctant" to grant relief in appropriate cases,

---

[16]  The defendants assert that: "The Declaratory Judgment Act prohibits the issuance of declaratory judgments 'in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country.'"  Defs.' Resp. Pls.' Mot. Clarification 8 (quoting 28 U.S.C. § 2201(a)).  Because the court declines to issue a declaratory judgment it does not address this argument.

the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 243 (1952); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."); *Green v. Mansour*, 474 U.S. 64, 72 (1985).

The court will not exercise its discretion to enter a declaratory judgment.  This case concerns the return of deposits now held by the United States government.  Plaintiffs will ultimately have a judgment directing the return of their deposits.  Plaintiffs have presented nothing to indicate that they have any reasonable belief that they will not receive their money or that they will be injured in the future in the same way by defendants' conduct. In this respect, the facts here can be contrasted with those in *Canadian Lumber Trade Alliance v. United States*, 30 CIT 892, 895, 441 F. Supp. 2d 1259, 1263 (2006), where the Court found "that future injury to Plaintiffs from Defendant's conduct is certain."  Thus, the court is unable to find that declaratory judgment, having prospective effect, is appropriate here.

Finally, plaintiffs seek injunctive relief, although they

make no argument for this remedy in their moving papers. In addition, in their complaints none of the parties ask for mandatory injunctive relief. Because plaintiffs fail to make any argument with respect to their request for an injunction their application for this relief is denied. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.").


CONCLUSION

For the foregoing reasons, the court denies defendants' motion for reconsideration and grants plaintiffs' motion for reconsideration. The parties are hereby ordered to contact Casey Ann Cheevers, Case Manager, United States Court of International Trade, One Federal Plaza, New York, New York, 10278, within five days of the issuance of this opinion to set the date for a hearing as to the form of judgment.


                                        /s/ Richard K. Eaton
                                        Richard K. Eaton

Dated: September 1, 2009
       New York, New York